UNITED STATES of America, Plaintiff-Appellee,

v.

Thomas CUNNINGHAM, James D. Hart, Albert Larcinese, Thomas Kemp, Dennis White, Roger Elkins and David Heinrich, Defendants-Appellants.

Nos. 78–5183–84.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 14, 1979.

Decided May 21, 1979.

---

* Honorable Bailey Brown, Chief United States District Judge for the Western District of Tennessee, sitting by designation.

Ronald D. Glotta, Detroit, Mich., Hugh M. Davis, Jr., Detroit, Mich., for defendants-appellants in No. 78–5183.

James K. Robinson, U. S. Atty., Peter J. Kelley, Mark R. Werder, Asst. U. S. Attys., Detroit, Mich., for plaintiff-appellee.

Leonard C. Jaques, Detroit, Mich., Hugh M. Davis, Jr., Detroit, Mich., for defendants-appellants in No. 78–5184.

Before CELEBREZZE and ENGEL, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

PHILLIPS, Senior Circuit Judge.

Thomas Cunningham, James D. Hart, Albert Larcinese, Thomas Kemp, Dennis White, Roger Elkins, and David Heinrich (jointly referred to as the appellants) appeal from their individual convictions and one-week jail sentences for violation of a temporary restraining order issued by the United States District Court for the Eastern District of Michigan.

The restraining order was granted on the basis of a verified complaint and affidavit filed by Chrysler Corporation (Chrysler) under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Chrysler sought to enjoin a work stoppage at its Trenton, Michigan, engine manufacturing plant. The work stoppage arose out of a labor dispute. The restraining order directed named and unnamed defendants [1] from, *inter alia*, refusing to leave the engine plant

---

1. The Local Union and its officials were originally named among the defendants in the restraining order. However, the order was subsequently dissolved as to those parties.

122

when directed; inciting, encouraging, carrying out, or otherwise causing the employees of Chrysler to engage in work stoppages; and preventing ingress to and egress from the engine plant or attempting by force or threat to prevent any person from engaging in employment for Chrysler. Service of the restraining order was completed as to each of the appellants.

Subsequently, the district court issued an Order to Show Cause why the appellants should not be held in criminal contempt for knowingly and willfully violating the restraining order. After a hearing on the show cause order, the district court adjudged each of the appellants guilty of criminal contempt, in violation of 18 U.S.C. § 401(3). The district court held the language of the restraining order was sufficient to put the appellants on notice of the conduct that it proscribed. The district court further found that after personal service of the restraining order, the appellants engaged in activities expressly prohibited by the restraining order.

The principal issues raised on this appeal are whether the restraining order was properly issued and whether the evidence was sufficient to support the verdict as to each appellant individually.

We affirm.

**2. (5) Strike Prohibited**

The Union will not cause or permit its members to cause, nor will any member of the Union take part in, any sit-down, stay-in or slow-down in any plant of the Corporation, or any curtailment of work or restriction of production or interference with production of the Corporation. The Union will not cause or permit its members to cause nor will any member of the Union take part in any strike or stoppage of any of the Corporation's operations or picket any of the Corporation's plants or premises until all the grievance procedure as outlined in this agreement has been exhausted, and in no case over a matter on which the Appeal Board has power and authority to rule, and in no other case until the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, within sixty (60) days after receiving the Plant Manager's decision, has notified the Manager of Labor Relations of the Corporation in writing that it has authorized a strike, specifying the grievances that are involved in the proposed strike, and negotiations have continued for at least seven (7) separate days on which meetings have been

I

At the time this action arose, Chrysler operated an engine manufacturing plant in Trenton, Michigan, at which it employed approximately 4500 employees. These employees were represented, for purposes of collective bargaining, by the United Automobile, Aerospace, and Agricultural Implement Workers of America, International Union (UAW) and its Local 372. A collective bargaining agreement (Agreement) between the UAW and Chrysler was in force at the plant. Included among the terms of the Agreement were a no-strike clause,[2] a grievance clause in the case of discharges,[3] and a number of provisions concerning the grievance and arbitration of disputes.[4]

On August 8, 1977, Chrysler discharged six Local Union officials and a walkout of hourly employees followed. On August 9, 1977, Chrysler filed a verified complaint in the United States District Court in which it sought a temporary restraining order requiring named and unnamed defendants to desist and refrain from participating in the continuing work stoppage and other activities arising therefrom.

In its complaint, Chrysler alleged that the work stoppage arose out of a dispute sub-

held after the Corporation has received such notice.

**3.** Section 42 of the Agreement provided:

**(42) Appeal of Discharge**

Should a discharged employee or the Union representative and the Plant Shop Committee consider the discharge to be improper, a complaint shall be presented in writing through the Shop Committee to the Labor Relations Supervisor within forty-eight (48) hours of the discharge. The management of the plant will review the discharge and give its answer within seventy-two (72) hours after receiving the complaint. The management of each plant is authorized to settle such matters. If the decision is not satisfactory to the Union, the matter shall be referred to Step 2 of the grievance procedure within five (5) working days after the management gives its answer to the Union.

**4.** Sections 22 through 38 of the Agreement, the text of which are not important here, constitute the grievance and arbitration sections of the Agreement.

ject to the grievance and arbitration provisions of the Agreement; that the work stoppage was ongoing and in violation of the Agreement's no-strike clause; that mass picketing at the entrance gates to the plant was restricting ingress to and egress from the plant; and that Chrysler had no adequate remedy at law. Chrysler further alleged that the work stoppage would cause it irreparable injury because it would be forced to cease production at other of its plants, resulting in significant monetary losses, loss of vast market opportunities, and the lay-off of thousands of employees. Chrysler also alleged that the interests of the defendants would be affected by the issuance of the restraining order only to the extent that they would be required to abide by the provisions of the Agreement into which they had voluntarily entered. In a supporting affidavit accompanying the complaint, Chrysler's Personnel Manager stated that Chrysler was willing to arbitrate the issues underlying the unauthorized work stoppage.

District Judge Philip Pratt [5] issued the restraining order of the court on the afternoon of August 9, 1977. The order stated, in relevant part, as follows:

Upon reading and filing the Complaint of Plaintiff, Chrysler Corporation ("Chrysler"), a Delaware corporation, supported by the Affidavit of K. C. BRANSTNER, where it is prayed that a preliminary injunction should issue, and it appearing that:

(a) Immediate relief is necessary to prevent irreparable injury and loss of lawful rights and maintenance of the peace in connection with the existing work stoppage, mass picketing, violence and threats of violence occurring at Chrysler's, Trenton Engine Plant and will thereby cause immediate and irreparable injury to Chrysler as shown by Chrysler's Complaint.

AND IT FURTHER APPEARING that the entry of a temporary restrain-

ing Order would do no injury to any legitimate interest of Defendants;

AND IT FURTHER APPEARING that there is a lack of any effective remedy at law to prevent such continued mass picketing, violence, and threats of violence which will irreparably injure Chrysler and the Court being fully advised in the premises;

\* \* \* \* \* \*

IT IS HEREBY ORDERED that the Defendants, . . . absolutely desist and refrain from;

1. Refusing to leave the Trenton Engine Plant after having been directed to do so by Plaintiff and its duly authorized agents.

\* \* \* \* \* \*

3. Inciting, inducing, encouraging, calling, procuring, authorizing, carrying out or otherwise causing the employees of Plaintiff to engage in work stoppages . . . or preventing them in any manner from reporting to work.
4. By force or unlawful threat to attempt to force any person to refrain from engaging in employment at the Trenton Engine Plant or at any of Chrysler's other plants, facilities, offices, or elsewhere or to prevent ingress to and egress from any of Plaintiff's plants or any part thereof, by threat, persuasion, or physical obstruction.

Subsequent to the issuance of the restraining order, paragraph two was abandoned in is entirety. A portion of paragraph three was abandoned because it incorporated by reference portions of the Agreement, contrary to the requirements of Fed.R.Civ.P. 65(d). We note that the abandoned portion of paragraph three was merely supplementary to the specific instructions of the paragraph and did not otherwise add clarification to the decree. itself. Thus, there was no defect in the restraining order. *See Gulf King Shrimp Co. v. Wirtz*, 407 F.2d 508, 517 (5th Cir. 1969).

---

5. This case was assigned to District Judge John Feikens. At the time Chrysler sought the restraining order, however, Judge Feikens was

unavailable and Judge Pratt handled the case in its initial stages.

Judge Pratt appointed special process servers selected by Chrysler to serve the restraining order.

The restraining order was served on individuals gathered at the main entrance to the Chrysler plant at approximately 7:00 and 10:00 p. m. on August 9, 1977. The special process servers, who were accompanied by Chrysler officials, served the court order upon only those employees of Chrysler who could be identified by the company officials. Each of the appellants was served with a copy of the restraining order on that evening.[6]

During the course of the 7:00 p. m. service, the restraining order was read aloud by one of the special process servers to the pickets who had gathered at the plant entrance. In addition, the local chief of police told the crowd that the restraining order required them to "leave and desist." The police chief further stated that the pickets' failure to leave might put them in violation of the court order and could result in arrests by federal officers. In spite of the restraining order, the work stoppage and picketing activities continued.

On August 10, 1977, Chrysler filed Proofs of Service of the restraining order as to each of the appellants and, in addition, a petition to adjudge the appellants in contempt of court. A motion to dissolve the restraining order was filed on behalf of the appellants that same day. On August 11, 1977, after a hearing on appellants' motion to dissolve the restraining order, Judge Pratt denied the motion.

On August 15, 1977, an Order to Show Cause why appellants should not be held in contempt was issued by District Judge John Feikens [7] reciting the evidence proposed to be offered in support of allegations that each of the appellants, subsequent to personal service, knowingly and willfully violated the restraining order at various times ranging from the evening of August 9 through August 12, 1977.

Prior to trial, appellants filed a number of motions, including a motion to denominate the United States of America the proper party plaintiff and the United States Attorneys prosecutors of the case, which motion was granted.[8] Appellants also filed an Affidavit of Bias and Prejudice, seeking the removal of Judge Feikens from the case. After a hearing before Judge Pratt, appellants' motion was denied.

Appellants' trial commenced on September 19, 1977. Service of the restraining order upon all appellants, except Cunningham, was stipulated to have occurred at the respective times indicated by the Affidavits of Service.[9] Service of the restraining order on Cunningham was established by testimony of the process servers who completed service on Cunningham.[10]

The prosecution introduced considerable testimony concerning the activities of the appellants after they had been served with the restraining order. The testimony established that during the 7:00 p. m. service of the restraining order, appellants Hart, Larcinese, White, Kemp, Elkins, and Heinrich (Elkins and Heinrich were not served personally until 10:00 p. m.) were seen in the group of people at the main entrance to the plant. They were walking back and forth on the driveway to the plant, blocking the plant entrance.

6. Affidavits of Service were completed by the process servers for each person that they served on August 9, 1977. At the appellants' trial for contempt of the court's restraining order, the parties stipulated that the Affidavits of Service were accurate as to each of the appellants, except Cunningham. The affidavits indicate that Elkins was served at 10:00 p. m., Hart at 7:30 and 10:00 p. m., Heinrich at 10:00 p. m., Kemp at 7:07 p. m., Larcinese at 7:30 and 10:00 p. m., and White at 7:30 p. m. Independent evidence was introduced to prove that Cunningham was served at both 7:28 and 10:00 p. m.

7. Judge Feikens took over the case at this time.

8. In the court's Order to Show Cause why the appellants should not be held in contempt, which issued on August 15, 1977, attorneys for Chrysler were appointed special United States Attorneys, *nunc pro tunc*, for the limited purpose of prosecuting the contempt proceedings.

9. See footnote 6, *supra*.

10. See footnote 6, *supra*.

Appellants Elkins, Heinrich, Hart, White, and Larcinese were seen among a group of pickets at the main gate at the 10:00 p. m. service. The pickets were walking in a circle across the driveway, both inside and outside the plant gates, chanting "Hell, no, we won't go." Appellant Heinrich was leading the marching pickets, directing them with waving and motioning gestures of his arms. Appellant Larcinese also encouraged and directed the crowd to continue walking in a circle across the driveway. At this time appellant White threatened Chrysler supervisor John Lycett.

There was further testimony by prosecution witnesses concerning picket line activity of appellants on August 10, 1977. At approximately 2:00 p. m. that day appellants Elkins, Heinrich, Kemp, Larcinese, and White were observed among a group of pickets moving back and forth in a circle across the driveway at the plant entrance gate, obstructing ingress to and egress from the plant. Elkins, Larcinese, and Heinrich were seen, at various times, encouraging and directing the movement of pickets in the circle by waving their arms and gesturing to the pickets to continue walking. This picketing took place both on and off the property of Chrysler.

No direct testimony was offered with respect to picket line participation by appellant Cunningham. It was stipulated, however, that witnesses whom the prosecution intended to call would testify that Cunningham conducted himself in the same manner as did the other appellants while they were picketing at the main gate.

John Ware, chief investigator for Chrysler, testified that at some point during the work stoppage appellant Kemp stopped him at the entrance gate and informed him that no hourly employees, but only salaried employees, would be allowed to enter the plant.

Karl Branstner and Archie Finch, both of whom are salaried Chrysler employees, testified that on the morning of August 10,

1977, appellant Elkins placed himself in front of Finch's car as Finch was attempting to drive through the main entrance gate. Elkins substantially impeded Finch's ingress to the plant and demanded identification of Finch.[11] As Finch drove through the gate, Elkins kicked Finch's car, causing some damage to it. Elkins also uttered a racial slur directed at Finch, who is a Negro. Appellants presented no witnesses in defense.

On October 6, 1977, Judge Feikens delivered the court's bench opinion finding the appellants guilty of criminal contempt. Judge Feikens noted that the temporary restraining order was properly issued in accordance with the procedural mandates of the Supreme Court's decision in *Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 190 (1970). With respect to the sufficiency of the restraining order, Judge Feikens stated:

> The language of the temporary restraining order was clear enough to put Defendants on notice of the proscribed conduct. They were ordered to "absolutely desist and refrain from, one, refusing to leave; two, inciting, inducing, encouraging, calling, procuring, authorizing, carrying out or otherwise causing employees of the Plaintiff to engage in work stoppages, other violations of the collective bargaining agreement or preventing them in any manner from reporting to work; and four, using force or the threat of force to get anyone to refrain from working or to prevent ingress and egress from any of Plaintiff's plants or any part thereof by threats, persuasion or physical obstruction.

With respect to violation of the restraining order, Judge Feikens held:

> After the service of the temporary restraining order of five of the Defendants, as I have just stated, six of the Defendants, who were present joined in the renewed chanting and walking in the main gate area. Between the hours of 7 and

---

11. Chrysler employee identification cards indicated whether an employee was salaried or hourly.

10 p. m. on August 9th, the picketing continued and Defendants Heinrich and Elkins were then served. Each Defendant was within the main gate area for a substantial period of time after being served with the temporary restraining order and engaged in chanting, marching across the opening of the main gate, stopping cars to check occupants' identification or encouraging others to engage in these acts.

On December 13, 1977, the appellants were sentenced to one week each in jail.

This appeal followed.

## II

Section 4 of the Norris-LaGuardia Act (Norris-LaGuardia), 29 U.S.C. § 104, substantially removes the jurisdiction of federal courts to issue restraining orders or injunctions in cases involving or growing out of labor disputes. Section 301(a) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a), provides legal remedies for breach of collective bargaining agreements to the parties to the agreement. In *Boys Markets*, the Supreme Court held that notwithstanding the anti-injunction provisions of § 4 of Norris-LaGuardia, federal courts were empowered under § 301 to issue injunctions against strikes, under the following circumstances:

"A District Court entertaining an action under § 301 may not grant injunctive relief against concerted activity unless and until it decides that the case is one in which an injunction would be appropriate despite the Norris-LaGuardia Act. When a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no injunctive order until it first holds that the contract *does* have that effect; and the employer should be ordered to arbitrate, as a condition of his obtaining an injunction against the strike. Beyond this, the District Court must, of course, consider whether issuance of an injunction would be warranted under ordinary principles of equity—whether breaches are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance."

398 U.S. at 254, 90 S.Ct. at 1594, quoting *Sinclair Refining Co. v. Atkinson*, 370 U.S. 195, 228, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962) (Brennan, J. dissenting).

Thus, under *Boys Markets*, a federal district court is authorized to enjoin strikes, pursuant to § 301 of the LMRA, only after it has been determined that the strike is in violation of a no-strike clause of a collective bargaining agreement, that the strike is over an arbitrable grievance which both parties are contractually bound to arbitrate, and that issuance of the injunction is otherwise warranted under ordinary principles of equity.[12] See *Jacksonville Mari-*

---

12. The equitable principles articulated in *Boys Markets* substantially incorporate paragraphs (a) through (d) of § 7 of Norris-LaGuardia, which is essentially a procedural section outlining the elements needed for the issuance of temporary or permanent injunctions arising out of labor disputes. At least two circuits have found the procedural requirements of § 7 applicable in § 301 cases, in addition to the specific elements articulated in *Boys Markets*, insofar as the § 7 requirements are consistent with the policies of § 301 of the LMRA. *Celotex Corp. v. Oil, Chemical and Atomic Workers International Union*, 516 F.2d 242 (3d Cir. 1975); *Hoh v. Pepsico, Inc.*, 491 F.2d 556 (2d Cir. 1974); *United States Steel Corp. v. United Mine Workers*, 456 F.2d 483 (3d Cir.), *cert. denied*, 408 U.S. 923, 92 S.Ct. 2492, 33 L.Ed.2d 334 (1972).

In *Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union*, 471 F.2d 872 (6th Cir. 1972), *cert. denied*, 411 U.S. 967, 93 S.Ct. 2149, 36 L.Ed.2d 687 (1973), where the district court failed to make a finding of irreparable harm before issuing an injunction in a § 301 case, this court held that the procedural requirements of § 7 could not be ignored in such a case. To the extent that the procedural requirements of § 7 coincide with those requirements recognized by the Supreme Court in *Boys Markets* as necessary in a § 301 case, we adhere to this position. Thus, we would agree with the Third Circuit that § 107(e), which has no corresponding provision in *Boys Markets*, "probably would not be appropriate in a § 301 case." *United States Steel Corp.*, 456 F.2d at 488. Insofar as other provisions of § 107 might

time Ass'n v. International Longshoremen's Association, 571 F.2d 319 (5th Cir. 1978); National Rejectors Industries v. United Steelworkers of America, 562 F.2d 1069 (8th Cir. 1977), cert. denied, 435 U.S. 923, 98 S.Ct. 1486, 55 L.Ed.2d 517 (1978); Kentucky West Virginia Gas Company v. Oil, Chemical and Atomic Workers, 549 F.2d 407 (6th Cir. 1977). Applying these standards to the facts of the instant case, we conclude that the district court properly issued the temporary restraining order against the work stoppage.

In the restraining order, the court specifically found present those equitable considerations, including proof of irreparable injury, which must underlie injunctive relief. The order also referred to Chrysler's verified complaint, wherein Chrysler alleged that the strike arose out of a dispute subject to the grievance and arbitration provisions of the contract and was in violation of a contractual no-strike clause. The order made note of the affidavit accompanying the complaint, in which Chrysler stated that it was willing to arbitrate the issues underlying the work stoppage.

Moreover, any uncertainty concerning the sufficiency of the court's determination that the restraining order should issue pursuant to Boys Markets was dispelled at the hearing on appellants' motion to dismiss the order. At that hearing,[13] the court stated that it was satisfied, from the complaint, affidavit, and copy of the collective bargaining agreement before it at the time it issued the restraining order, that the strike was in violation of the collective bargaining agreement and that the cause of the strike was an otherwise arbitrable dispute.

The court further stated that it was unnecessary to order Chrysler to arbitrate the dispute, since the affidavit clearly evidenced Chrysler's willingness to do so. The court then elaborated on the allegations in Chrysler's complaint concerning the irreparable injury which would result to it if the strike were to continue. The court found the facts sworn to in the complaint concerning the potential loss of considerable sums of money and vast market opportunities were sufficient to establish the element of irreparable injury. See Celotex Corp. v. Oil, Chemical and Atomic Workers International Union, 516 F.2d 242, 247 (3d Cir. 1975).

Furthermore, we recognize the well-established principle that the validity of a criminal contempt adjudication resulting from the violation of a court order does not turn on the validity of the underlying order. Therefore, even if the district court's temporary restraining order was invalid, it was to be obeyed until it was overturned on appeal. United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947); North American Coal Corp. v. Local Union 2262, UMW, 497 F.2d 459, 465 (6th Cir. 1974); Blockson & Co. v. Marshall, 582 F.2d 1122, 1124 (7th Cir. 1978); ITT Community Development Corp. v. Barton, 569 F.2d 1351, 1356 (5th Cir. 1978).

III

Section 401(3) of 18 U.S.C. authorizes a federal court to punish as contempt of its authority "disobedience and resistance to its

be applicable in a § 301 case, we find that any deficiency in the court's restraining order, in that respect, was cured at the hearing on appellants' motion to dismiss the restraining order, which hearing was held two days after the issuance of the order of the court.

In view of our holding, we decline to speculate whether other elements of § 7 of Norris-LaGuardia not specifically mentioned by the Supreme Court in Boys Markets are applicable in a § 301 case. In that regard, we note that in Granny Goose Foods, Inc. v. Teamsters, 415 U.S. 423, 445 n.19, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974), the Supreme Court reserved review

of whether a temporary restraining order issued pursuant to the Boys Markets exception to Norris-LaGuardia should be governed by the 5-day time limit of § 7 of Norris-LaGuardia rather than the time limits of Fed.R.Civ.P. 65(b). See also North American Coal Corp. v. Local Union 2262, UMW, 497 F.2d 459, 464 (6th Cir. 1974); Associated General Contractors v. Illinois Conference of Teamsters, 486 F.2d 972, 975 n.8 (7th Cir. 1973).

13. The hearing on appellants' motion to dismiss the restraining order was held on August 11, 1977, two days after the restraining order issued.

lawful writ, process, order, rule, decree, or command." Criminal contempt requires both a contemptuous act and a willful, contumacious, or reckless state of mind (criminal intent). *United States v. Marx*, 553 F.2d 874, 876 (4th Cir. 1977); *In re Joyce*, 506 F.2d 373, 378 (5th Cir. 1975); *In re Farquhar*, 160 U.S.App.D.C. 295, 492 F.2d 561 (1973). In *Marx*, criminal intent was defined as " 'a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful . . . ' " 553 F.2d at 876.

Appellants contend that there was insufficient evidence to support their convictions of criminal contempt of court. We note at the outset that the evidence introduced by the Government went undisputed at the trial, as appellants did not present any witnesses in their behalf.

In viewing the evidence in a criminal contempt case, as in any other criminal case, the reviewing court is obligated to consider the evidence, along with all inferences reasonably drawn therefrom, in the light most favorable to the Government. *Glasser v. United States*, 315 U.S. 60, 82, 62 S.Ct. 457, 86 L.Ed. 680 (1941); *United States v. Partin*, 524 F.2d 992, 998 (5th Cir. 1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1493, 47 L.Ed.2d 573 (1976); *In re Joyce*, 506 F.2d at 376. So viewing the record, we conclude that the evidence before the district court was probative of appellants' guilt beyond a reasonable doubt.

Each of the appellants was served with a copy of the restraining order between 7:00 and 10:00 p. m. on August 9, 1977. During the course of the 7:00 o'clock service of the restraining order, at which time each of the appellants was seen among the gathered pickets, the order was read out loud by a special process server and then "explained" by the chief of police.

The restraining order clearly delineated those activities which it prohibited. By the terms of the restraining order, appellants were prohibited from, among other things, remaining on Chrysler's property after being instructed to leave; participating in or otherwise encouraging employees of Chrys-

ler to engage in a work stoppage; and, preventing ingress to and egress from the Chrysler plant by threat, persuasion, or physical obstruction.

After individual service of the restraining order, each of the appellants participated in picket-line activity in the driveway to the plant, both on and off company property, which blocked the entrance to the plant. Appellants Heinrich, Larcinese, and Elkins were identified as leading and encouraging the activity of other pickets. Appellant White threatened a Chrysler employee and appellant Elkins physically obstructed the movement of and caused damage to an employee's car as the employee attempted to drive through the front entrance to the plant. Additionally, appellant Kemp stated that no hourly employees would be allowed to enter the plant.

The reasonable inferences that can be drawn from this and other evidence is that appellants were aware of the court order and should have known its contents. It is also reasonable to conclude that appellants intended to, and did, participate in conduct prohibited by, and in utter disregard of, the court's restraining order. The record fully supports the district court's finding that appellants willfully disobeyed its temporary restraining order.

Appellants also contend that Judge Feikens should have disqualified himself in this case for reasons of personal bias and prejudice. The court has considered this ground, as well as the other grounds asserted by appellants for reversal, and finds them to be without merit.

The judgment of the district court is affirmed.