**OTIS ELEVATOR COMPANY, Plaintiff,**

**v.**

**LOCAL 1, INTERNATIONAL UNION OF ELEVATOR CONSTRUCTORS; John Green, individually and as President/Business Manager of Local 1; Tommy Moore, individually and as Steward of Local 1; and all others conspiring, acting in concert or otherwise participating with them or acting in their aid or behalf, Defendants.**

No. 88 Civ. 2968 (KC).

United States District Court,
S.D. New York.

May 4, 1988.

Donald Savelson, Proshauer Rose, New York City, for plaintiff.

Richard H. Markowitz, Markowitz & Richman, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

CONBOY, District Judge:

On April 28, 1988, the court entered a temporary restraining order against the de-

fendants restraining generally acts relative to the shutting off by union members employed by plaintiff of electronic pagers, commonly referred to as "beepers," during the hour those employees took their lunch breaks. At that time, the court set the matter down for hearing regarding the issuance of preliminary injunctive relief on May 2. An evidentiary hearing was held, beginning May 2 and concluding May 3, 1988. This Memorandum Opinion and Order constitutes the court's findings of fact and conclusions of law.[1]

## FINDINGS

1. The contract between the parties, a collective bargaining agreement, runs from July 1, 1987 through June 30, 1990. Thus, it currently is in effect.

2. The collective bargaining agreement contains a no-strike section. It also contains a mandatory grievance procedure, with arbitration the final step.

3. The grievances that are the genesis of the work stoppage, concerning minimum vacation time accrued, and the inclusion of certain travel time during overtime worked in the calculation of 1) vacation pay and 2) contributions to an annuity fund,[2] are arbitrable under the collective bargaining agreement.

4. Members of the union, either with the authorization of, or as ratified by union personnel, particularly John Green, have engaged in a concerted work stoppage or job action in refusing to respond to pages between the hours of 12:00 noon and 1:00 P.M.

5. There has been irreparable injury to the plaintiff's business operations. Specific instances of irreparable injury to the plaintiff's business has been established by a preponderance of the evidence. Indeed, the injury is established by clear and convincing evidence.

6. There has been irreparable injury to the plaintiff's goodwill and business reputation. Specific instances of irreparable injury to the plaintiff's goodwill and business reputation have been established by a preponderance of the evidence, and, in fact, by clear and convincing evidence.

7. The job action by the defendant has endangered public safety. Specific instances of trapped passengers have been established by a preponderance of the evidence,

---

1. The preliminary injunction was granted by the court orally on the record on May 3, 1988. This Memorandum Opinion and Order memorializes the court's findings of facts and conclusions of law, which were stated on the record. This procedure was followed by the court in the exercise of caution, because it appeared that the temporary restraining order issued by the court on April 28, 1988 became void on May 3 at the conclusion of the hearing, five days from issuance. See 29 U.S.C. § 107(e) (1982). Many of the facts referred to are contained in the record of the hearing. Because the court does not have access to the official court transcript at this time, no reference to particular pages of the record can be made.

2. At the hearing, the union argued that any controversy regarding the service mechanic union members' right to turn off their pagers and take an uninterrupted lunch hour is unconnected to the disputes concerning vacation pay and annuity fund contributions. The court rejects this argument. The evidence on the record demonstrates that the union members began a concerted work stoppage, accomplished by having the service mechanic employees turn off their pagers for the hour from 12:00 P.M. to 1:00 P.M., after discussions between Thomas Lynch, Otis's manager of field employee relations, and John Green, the union's business manager, on the subjects of minimum accrued vacation time and calculating certain travel time into the vacation pay and annuity fund contribution formulas. Additionally, the union's counsel had in early February written Otis to request arbitration of the issue of "vacation pay entitlement" (minimum time accrued). When contacted by Lynch, however, counsel for the union indicated that the union did not wish to proceed to pick arbitrators. On April 26, 1988, one day after a lunchtime meeting of employees in the midtown office, and after a mass departure by employees at lunchtime on the 26th, Lynch sent Green a telegram demanding a cessation of the work stoppage, and reiterating the company's willingness to arbitrate. The union presented no evidence that it had any reason to order all service mechanics to turn their beepers off and go to lunch en masse at 12:00 independently of the dispute on the vacation pay and travel time issues, other than that service mechanic employees are entitled to a lunch hour. The court notes that in contrast with construction work employees and modernization work employees, service employees have no set lunch period established in the collective bargaining agreement.

and, in fact, by clear and convincing evidence.

8. Plaintiff has no adequate remedy at law.

9. On September 4, 1987, pursuant to a stipulation between these same parties, Judge Vincent L. Broderick of this court approved a Consent Order For Preliminary and Permanent Injunction mandating that union employees not refuse to perform overtime callbacks.

10. On February 23, 1988, Judge Kevin T. Duffy of this court approved a Consent Order For Preliminary and Permanent Injunction mandating a cessation of a concerted work stoppage relating to subcontracting of work by plaintiff.

11. There has been, and there is likely to continue to be, irreparable injury to the plaintiff.

12. The balance of equities point decisively toward the plaintiff.

13. On the basis of this factual record, there is a likelihood that the plaintiff will prevail on the merits.

14. Absent injunctive relief, there is a likelihood that the conduct engaged in by union members will recur.[3]

15. The likelihood that the conduct constituting the work stoppage will recur if not enjoined correlates to the acts of the defendant Local 1, its Business Manager, the defendant John Green, and the shop steward for the company's midtown office, the defendant Tommy Moore, in directing union members to engage in such conduct, and the responsibility of defendants Local 1 and Green to promulgate union policy, and the responsibility of defendant Moore to disseminate the union policies promulgated by the other two defendants.

16. The testimony of Thomas Lynch is found to be particularly convincing and credible.

## DISCUSSION

In *Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), the Supreme Court overruled the holding of an earlier case, *Sinclair Refining Co. v. Atkinson*, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed. 2d 440 (1962), and held that under certain circumstances a district court could enjoin a labor strike that breached a no-strike obligation contained in a collective bargaining agreement. *See* 398 U.S. at 249–55, 90 S.Ct. at 1591–95. Those circumstances include the following: 1) the collective bargaining agreement contains a mandatory grievance procedure; 2) the agreement contains a no-strike clause; 3) the underlying dispute(s) involved is/are subject to the mandatory grievance procedure; and 4) the traditional requirements of equity—irreparable harm and a balance of hardships—are satisfied. *See New York Times Co. v. Newspaper & Mail Deliverers' Union*, 592 F.Supp. 1043, 1050 (S.D.N.Y.1984). All of these elements are present in this case.

The underlying disputes, *see* finding 3 *supra*, are arbitrable. They have to do with the proper interpretation of Sections III and VII of the collective bargaining agreement. There is a no-strike provision in the collective bargaining agreement. *See* finding 2, *supra*.

The traditional requirements of equity exist. There are two separate reasons, each sufficient individually, why irreparable harm exists because of the work stoppages. First, "prompt servicing of elevators ... in emergency situations ... is important to public safety, health and welfare." *Elevator Mfrs.' Ass'n of New York, Inc. v. Local 1, Int'l Union of Elevator Constructors*, 689 F.2d 382, 383 (2d Cir. 1982) (reversing denial of motion for preliminary injunction). Plaintiff has presented evidence of two separate incidents, both occurring April 26, 1988, where passengers were trapped in elevators.[4] In both in-

---

3. In fact, as described by a witness for the plaintiff, Donald Frascelli, on May 2, 1988, subsequent to this court's signing of a temporary restraining order, a union shop steward ignored repeated pages until after 1:00 P.M. When

asked why he had not responded earlier, the shop steward replied that he was not supposed to answer his beeper during the lunch hour.

4. This is not by any means the only type of emergency that may occur. *See Elevator Mfrs.'*

stances, employees were paged repeatedly from the time plaintiff received notice of the situation, between the hours of 12:00 noon and 1:00 P.M., but failed to answer the pages *until after 1:00 P.M.*

Second, the work stoppages are likely to damage plaintiff's business irreparably. They are likely to lead to lost goodwill. *See New York Times Co.*, 592 F.Supp. at 1051. Besides goodwill, plaintiff has demonstrated irreparable harm in the substantial prospect that it may suffer a permanent loss of business. *See Dannon Co. v. Whelan*, 555 F.Supp. 361, 366–67 (S.D.N.Y. 1983) (company received calls from customers threatening to discontinue carrying company's product); *Restaurant Assocs. Indus. v. Hotel, Restaurant Employees & Bartenders Int'l Union, Local 71*, 66 Lab. Cas. (CCH) para. 11,967 at 22,065 (E.D.N.Y. 1971) (work slowdown in public restaurant and refusal to serve customers jeopardized future of business and caused loss of goodwill).

The balance of hardships tips decidedly in plaintiff's favor. The company has sought to bring these matters in dispute to arbitration. While the union originally indicated its desire to arbitrate at least one of the issues concerning vacation pay, it later decided not to proceed. All the court is requiring the union to do is execute its contractual obligation not to strike, and to arbitrate the disputes. *See New York Times Co.*, 592 F.Supp. at 1051. The effect on the union of granting the injunction sought is less onerous than the harm the company will suffer if the injunction is denied. *See Elevator Mfr.'s [sic] Ass'n v.*

*International Union of Elevator Constructors Local No. 1*, 342 F.Supp. 372, 374–75 (S.D.N.Y.1972).

Findings 3, 14 and 15 are made in conformance with the mandate of the Second Circuit in the case of *United Parcel Service (New York), Inc. v. Local 804, International Brotherhood of Teamsters*, 698 F.2d 100, 111 (2d Cir.1983).[5] Based on all the evidence, as found by the court, the court concludes that plaintiff has established a clear right to the requested relief.

WHEREFORE, it is ORDERED that, pending the final determination of this action, the defendants hereby are

(1) enjoined from calling, causing, inducing, authorizing, encouraging, conducting, continuing in or engaging in any work stoppage consisting of a refusal to respond to pages occurring during the hours of 12:00 noon and 1:00 P.M., or any other form of strike that is aimed at influencing the outcome of the disputes constituting finding 3, *supra;*

(2) enjoined from, by union discipline, penalty or otherwise, causing any of the events detailed in paragraph (1), immediately above;

(3) enjoined mandatorily to communicate and effectuate the provisions of the orders issued by the court in this matter, including this one.

It is further ORDERED that the parties hereto are to proceed to arbitration on the issues contained in finding 3 of this Memorandum Opinion and Order in accordance with the mandatory grievance procedures of the collective bargaining agreement

*Ass'n of New York, Inc. v. Local 1, Int'l Union of Elevator Constructors*, 689 F.2d 382, 383 (2d Cir.1982).

**5.** Parenthetically, the court notes that *United Parcel Service (New York), Inc. v. Local 804, Int'l Bhd. of Teamsters*, 698 F.2d 100 (2d Cir.1983), also states that section 8 of the Norris–LaGuardia Act, 29 U.S.C. § 108 (1982), which in substance precludes a court from entering injunctive relief in favor of any complainant who has not taken "every reasonable effort" to settle the dispute, *see id.*, does not, as counsel for the union seemed to argue in closing, "require the formality of demanding arbitration on the way to the courthouse door," if "a demand for arbi-

tration has little chance of inducing settlement of the dispute before entry of a *Boys Markets* injunction." *United Parcel Serv. (New York), Inc.*, 698 F.2d at 106. The court notes that unlike that case, in this action the collective bargaining agreement's no-strike clause does not contain a provision for expedited arbitration in the wake of an alleged violation of the no-strike clause. *See id.* at 106–07. The court also notes that the record reflects that on two prior occasions since September, 1987, the company has been forced to resort to this court before the union would consent to the entry of injunctive relief, and that on a third occasion, resort to this court was narrowly averted.

forthwith. *See New York Times Co.,* 592 F.Supp. at 1051.

SO ORDERED.