104 F.3d 350
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
ST. BARNABAS HOSPITAL, and St. Barnabas Nursing Home,
Plaintiffs-Appellants,
v.
1199 NATIONAL HEALTH AND HUMAN SERVICE EMPLOYEES UNION,
AFL-CIO, Defendant-Appellee.
 No. 96-7834.
 United States Court of Appeals, Second Circuit.
 Sept. 13, 1996.
 
 1
 FOR APPELLANTS: Joel E. Cohen, McDermott, Will & Emery, New York, NY.
 
 
 2
 FOR APPELLEE: Mitra Behroozi, Levy, Pollack, Ratner & Behroozi, New York, NY.
 
 
 3
 Before McLAUGHLIN and JACOBS, Circuit Judges, and KELLEHER,* District Judge.
 
 
 4
 This cause came on to be heard on the transcript of record from the United States District Court for the Southern District of New York and was argued.
 
 
 5
 ON CONSIDERATION WHEREOF, it is hereby ordered, adjudged, and decreed that the judgment of the district court be and it hereby is AFFIRMED.
 
 
 6
 St. Barnabas Hospital ("St.Barnabas") is a health care facility located in the Bronx, New York. 1199 National Health and Human Service Employees Union, AFL-CIO (the "Union") represents approximately 1850 employees at St. Barnabas, including approximately 350 registered nurses. St. Barnabas and the Union are parties to a collective bargaining agreement (the "Agreement") that governs the employment of registered nurses at St. Barnabas.
 
 
 7
 The Agreement contains a multi-step grievance procedure for resolution of employment disputes. That procedure applies to:
 
 
 8
 [any] dispute or complaint arising between the parties ... under or out of [the] Agreement or the interpretation, application, performance, termination, or any alleged breach thereof.
 
 
 9
 The grievance procedure provides that any dispute not settled by the parties in accordance with its initial terms shall be referred for arbitration. The Agreement also contains a broad "no-strike" clause, which states that:
 
 
 10
 No Employee shall engage in any strike, sit-down, sit-in, slow-down, cessation or stoppage or interruption of work, boycott, or other interference with the operations of the Employer.
 
 
 11
 On May 30, 1996, St. Barnabas revised the vacation policy for registered nurses. Stating that it sought to maintain continuity of care for patients, St. Barnabas determined that registered nurses, who are entitled to four weeks' vacation per year, could no longer take vacation for more than two consecutive weeks at a time. This policy change required St. Barnabas to withdraw some previously granted approvals for nurses to take vacations of more than two consecutive weeks.
 
 
 12
 The Union informed St. Barnabas that the withdrawal of vacation approvals placed a substantial economic hardship on many nurses. The Union also told St. Barnabas that it believed that the change in vacation policy (and subsequent withdrawal of approvals) was in retaliation for the nurses having engaged in a one-day sympathy strike earlier in the year.
 
 
 13
 On June 17, 1996, the Union sent a notice to St. Barnabas, indicating that its members would conduct "informational picketing" at St. Barnabas between July 2-4, 1996. On June 25, 1996, the Union sent a second notice, indicating that it would also conduct informational picketing between July 9-10, 1996.
 
 
 14
 On June 26, 1996, St. Barnabas filed an action in the New York State Supreme Court, Bronx County, seeking a temporary restraining order and preliminary injunction prohibiting the Union from engaging in its scheduled informational picketing. The Union immediately removed the action to the United States District Court for the Southern District of New York (Robert P. Patterson, Jr., Judge ). The district court denied St. Barnabas' request for a temporary restraining order, and scheduled a hearing on the issue of a preliminary injunction for July 8, 1996. In the meantime, the Union abandoned its planned picketing during the July 2-4 period.
 
 
 15
 After the hearing on July 8, the district court denied St. Barnabas' application for a preliminary injunction. The Union then picketed as planned between July 9-10. During those days, union nurses paraded in front of St. Barnabas, chanting and handing out fliers to the public explaining the Union's position on the vacation policy change. All nurses picketed only on their own time--they worked their full hours without change or delay, and picketed only before or after their shifts, or during their breaks.
 
 
 16
 St. Barnabas now appeals, arguing that the district court erred in denying its application for a preliminary injunction. The Union argues that the appeal is moot.
 
 
 17
 1. Mootness. The Union argues that this appeal should be dismissed as moot, because the Union has already conducted its informational picket, and has scheduled no future pickets. We conclude that the appeal is not moot.
 
 
 18
 When events subsequent to the filing of a case prevent the court from fashioning effective relief, the case should generally be dismissed as moot. See Cook v. Colgate Univ., 992 F.2d 17, 19 (2d Cir.1993). An exception to this rule applies where: (1) the duration of the challenged action is too short to allow full litigation prior to its expiration or cessation; and (2) there is a reasonable expectation that the same complaining party will likely be subjected to the same action. See Sosna v. Iowa, 419 U.S. 393, 399-401 (1975); Fox v. Board of Trustees of SUNY, 42 F.3d 135, 142-43 (2d Cir.1994), cert. denied, 115 S.Ct. 2634 (1995).
 
 
 19
 The underlying issue over which the Union picketed in July--St. Barnabas' modification of the registered nurses' vacation policy--remains unresolved. See Buffalo Forge Co. v. United Steelworkers of Am., 428 U.S. 397, 403 (1976). And, the Union's history of and stated preference for informational picketing give rise to a "reasonable expectation" that the Union may again picket St. Barnabas over the vacation policy change. See National Broadcasting Co. v. Communication Workers of Am., 860 F.2d 1022, 1023-24 (11th Cir.1988).
 
 
 20
 It is also clear that the issue in this case will "evade review." The Union need only give ten days notice of an informational picket. See 29 U.S.C. § 158(g). Ten days is insufficient time to pursue a case through the full appeals process.
 
 
 21
 2. Preliminary Injunction. St. Barnabas argues that the district court erred in denying its application for a preliminary injunction. We disagree.
 
 
 22
 We review a district court's grant or denial of a preliminary injunction for an abuse of discretion. See Niagara Hooker Employees Union v. Occidental Chemical Corp., 935 F.2d 1370, 1374 (2d Cir.1991). Within this overriding general review, we review the district court's findings of fact for clear error. Niagara Hooker, 935 F.2d at 1374.
 
 
 23
 In Boys Markets, Inc. v. Retail Clerks Union, Local 770, 398 U.S. 235 (1970), the Supreme Court held that federal courts may enjoin a strike or other labor interruption "when it arises out of a grievance that is the subject of compulsory arbitration, provided that the usual equitable requirements for preliminary relief are met." Elevator Manufacturers' Ass'n of New York, Inc. v. Local 1, Int'l Union of Elevator Constructors, 689 F.2d 382, 385 (2d Cir.1982). Such an injunction is appropriate where: (1) the collective bargaining agreement contains a mandatory grievance procedure which covers the underlying dispute; (2) the agreement contains an express or implied no-strike clause that covers the contested activities of the union; and (3) the employer can show irreparable harm, and either a likelihood of success on the merits or a favorable balance of hardships. See Elevator Manufacturers, 689 F.2d at 385-87; Niagara Hooker, 935 F.2d at 1376; Otis Elevator Co. v. Local 1, Int'l Union of Elevator Constructors, 684 F.Supp. 80, 82 (S.D.N.Y.1988).
 
 
 24
 Assuming without deciding that the Agreement's no-strike clause is broad enough to encompass informational picketing under the circumstances of this case, we nonetheless find that St. Barnabas' has failed to demonstrate irreparable harm. "To establish irreparable harm, [a party] must demonstrate an injury that is neither remote nor speculative, but actual and imminent." Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir.1989) (internal quotations omitted); see also Jack Kahn Music Co. v. Baldwin Piano & Organ Co., 604 F.2d 755, 759 (2d Cir.1979).
 
 
 25
 St. Barnabas has produced no persuasive evidence that the Union's informational picketing has caused or will cause the hospital "actual and imminent" irreparable harm. St. Barnabas asserts that an informational picket may cause patients coming to the hospital to turn away, or the chanting may distract health care personnel. While these injuries are the type that cannot be compensated with money damages (and thus may be "irreparable"), St. Barnabas has not shown that they are likely to occur. St. Barnabas produced just one witness who testified that a staffing coordinator at the hospital could hear the noise from the picket and "was terribly distracted." Other than that, St. Barnabas argues only that picketing is "inherently coercive," and that it is "common sense" that some potential patients will not cross a picket line. This is insufficient to lift St. Barnabas' alleged injury above the "remote and speculative" level.
 
 
 26
 We have considered all of the additional arguments raised by St. Barnabas, and find them to be without merit.
 
 
 27
 Accordingly, the decision of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Robert J. Kelleher, of the United States District Court for the Central District of California, sitting by designation