**John WINSTON, et al., Plaintiffs,**

v.

**GENERAL DRIVERS, WAREHOUSE-MEN & HELPERS LOCAL UNION NO. 89, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, et al., Defendants.**

No. C91–0204–L(R).

United States District Court,
W.D. Kentucky,
at Louisville.

Jan. 6, 1995.

Marvin L. Coan, Hummel & Coan, Louisville, KY, for plaintiffs John Winston, Tom Jennings, Dale Huffenberger, Fred Potter, Richard Bounds, Ercil Wilkinson, Elmer Finley, Charles Hammond, Gregory Woodward, Larry Worsham, Thomas Keel, Richard Austin, John Ramby, Charles McKenzie, Larry Harris, Greg Phillips, Randy Sierakowski, Paul Sierakowski, Joe Thompson, Ronald Matteson, Austin Davis, David Miller, Albert Trogdon, Russell Gibson, James McKim, Austin Summerlin, Charles Baxter, Donald R. Corder.

F. Larkin Fore, Mulloy, Walz, Wetterer, Fore & Schwartz, James U. Smith, III, Smith & Smith, Louisville, KY, C. John Holmquist, Jr., Charfoos, Reiter, Peterson, Holmquist & Pilchak, Farmington Hills, MI, for defendant Dallas & Mavis Forwarding Co.

James U. Smith, III, Smith & Smith, Louisville, KY, C. John Holmquist, Jr., Charfoos, Reiter, Peterson, Holmquist & Pilchak, Farmington Hills, MI, for defendant Provincial American Truck Transporters.

Alton D. Priddy, Hardy, Logan, Priddy & Cotton, Louisville, KY, for defendant Intl. Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

RUSSELL, District Judge.

### I.

1. The parties to this proceeding, the Defendants, Dallas & Mavis Forwarding Company (D & M), and General Drivers, Warehousemen & Helpers, Local Union No. 89 (Local 89), are parties to a national multi-employer, multi-union collective bargaining agreement known as the National Master Automobile Transporters Agreement (Agreement), which expires May 21, 1995.

2. Pursuant to that arbitration process, on December 12, 1990, an arbitration panel rendered a decision requiring D & M to merge or "dovetail" its Kentucky Truck Plant (KTP) seniority list with that of employees laid off by Allied Systems on March 5, 1990, and to offer employees work based upon the merged seniority list.

3. On February 15, 1991, D & M filed an action in the Western District of Kentucky (C–91–0099–L(M)) to vacate the arbitration award.

4. On March 29, 1991, the Plaintiffs filed the action herein seeking to vacate the opinion and award of the arbitration panel, or alternatively, for damages against Local 89 and D & M for breach of the duty of fair

representation and breach of the collective bargaining agreement, respectively.

5. The District Court in the senior action (C–91–0099–L(M)) upheld the arbitration award of December 12, 1990, affirming the Finding of Facts, Conclusions of Law, and Recommendations of the U.S. Magistrate, the Honorable George G. Long, which were entered on May 29, 1991. D & M appealed the decision of the District Court to the Sixth Circuit Court of Appeals, which affirmed Judge Meredith's decision on August 5, 1992, holding that the decision of the arbitration panel drew its essence from the collective bargaining agreement. *Dallas & Mavis Forwarding Company, Inc. v. General Drivers, Warehousemen & Helpers, Local Union No. 89,* 972 F.2d 129 (6th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 973, 122 L.Ed.2d 128 (1993).

6. On December 5, 1994 a Second Supplemental Opinion and Award (dated November 21, 1994) (the "Award") was issued by an arbitration panel which was provided for under the collective bargaining agreement of D & M and Local 89. The Award required D & M to pay sums to certain members of Local 89, a pension fund and taxes, all totalling about $1.9 million in resolution of a dispute concerning seniority status of those members. The Award stated that the arbitration board retained jurisdiction over certain matters which were not resolved there.

7. The Agreement between D & M and Local 89 provides that the decision of the arbitration board is final and binding on all parties. Article 7, § 7.

8. The Agreement provides that failure to comply with the final decision of the arbitration board within ten (10) days thereafter entitles the complying party the right to economic recourse. Article 7, § 10.

9. The Agreement provides that the union members are not entitled to strike on any issues submitted to arbitration for determination until the employer fails to comply with the final and binding arbitration award. Article 7, § 7.

10. Pursuant to a letter dated December 21, 1994, Local 89 gave D & M notice of its intention to strike at the D & M terminal at the Kentucky Truck Plant in Jefferson County, Kentucky as a result of non-compliance with the Award. Local 89 commenced the strike on December 28, 1994.

11. The suit brought by the Plaintiffs in this action is pursuant to Section 301 of the Labor Relations Management Act of 1947. The main action has been advanced on the court's docket from June 8, 1995 to February 1, 1995 for trial on the issues of breach of the duty of fair representation by Local 89 and breach of the collective bargaining agreement by D & M. The issue of damages has been reserved for further proceedings if necessary.

12. Local 89 claims D & M failed to comply with the Arbitration Board Award within 10 days. On December 21, 1994, Local 89 sent D & M notice of its intent to strike.

13. On December 28, 1994, Local 89 began peaceful picketing at D & M's facility at KTP.

14. On December 28, 1994, D & M filed for leave to amend its answer and to file a cross-claim against Local 89, seeking to recover from Local 89 any amounts paid in accordance with the Award of the arbitration panel if a verdict were entered in the within action resulting in a finding that D & M was not obligated to pay back-pay or other benefits to the individuals "who have received checks from the company". The scope of the cross-claim is limited to those amounts disbursed in accordance with the Award which would not have been disbursed but for the union's insistence. While the motion of D & M requests a stay of the Award, their cross-claim also requests that Local 89 be enjoined from striking or engaging in any concerted work activities.

15. The court entered a temporary restraining order on December 29, 1994, restraining Local 89, and its members, from engaging in any strike, work stoppage, or concerted refusal to perform normal duties of employment. The court further stayed the enforcement of the Award.

16. Following the entry of the temporary restraining order, Local 89 filed its Motion to Dissolve the Restraining Order. Thereafter,

D & M timely filed its Motion for a Preliminary Injunction.

17. Thereafter the parties stipulated that an evidentiary hearing was required within five (5) days of the entry of the temporary restraining order. The parties stipulated for purposes of this proceeding only that the five (5) days would mean five (5) working days such that the temporary restraining order would remain in full force and effect through Friday, January 6, 1995.

18. This matter was set for an evidentiary hearing on D & M's Motion for Preliminary Injunction and Local 89's Motion to Dissolve the Temporary Restraining Order at 9:00 a.m. e.s.t. on January 6, 1995.

19. The parties have filed stipulations of fact; those stipulations are incorporated herein.

## II.

The primary issue the court must address is whether the employer is entitled to a *Boys Markets* injunction under § 301 of the Labor Management Relations Act (LMRA), 1947, enjoining Local 89's strike pending the final resolution of the employees' underlying claim of unfair representation against Local 89. The landmark decisions addressing the issue as to when a court may issue an injunction against strikes notwithstanding the specific prohibitions contained in § 4 of the Norris–LaGuardia Act are *Boys Markets, Inc. v. Retail Clerk's Union, Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970) and *Buffalo Forge Company v. United Steelworkers of America, AFL–CIO*, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976).

### A. *Boys Markets* Injunctions

In *Boys Markets*, the Supreme Court reconciled the specific anti-injunctions provisions of § 4 of the Norris–LaGuardia Act with § 301(a) of the LMRA, which provides for the enforcement of no-strike provisions under collective-bargaining agreements. Recognizing the congressional policy favoring arbitration of disputes, the Court reasoned that if employers were denied the ability to enjoin strikes in violation of the no-strike provision of a collective bargaining agreement, then the entire arbitral process would be greatly undermined. In reaching its decision, the Court recognized the *quid pro quo* nature of the employees' promise not to strike and the employer's promise to arbitrate grievances. Without a means by which to enforce the no-strike provision, the employees' promise would be a hollow one.

In overruling *Sinclair Refining Co. v. Atkinson*, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962), the Supreme Court held that a court may enjoin a strike where the situation involves a collective bargaining agreement mandating an arbitration procedure to resolve grievances. Additionally, the court must find that the traditional equitable bases for relief are satisfied. In reaching its decision, the Supreme Court adopted the principles outlined in the *Sinclair* dissent. The Court stated these principles were to be followed by District Courts in determining whether to grant an injunction:

> A District Court entertaining an action under s 301 may not grant injunctive relief against concerted activity unless and until it decides that the case is one in which an injunction would be appropriate despite the Norris–LaGuardia Act. When a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no injunctive order until it first holds that the contract does have that effect; and the employer should be ordered to arbitrate, as a condition of his obtaining an injunction against the strike. Beyond this, the District Court must, of course, consider whether issuance of an injunction would be warranted under ordinary principles of equity—whether breaches are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance. 370 U.S., at 228, 82 S.Ct., at 134.

398 U.S. at 254, 90 S.Ct. at 1594.

### B. *Buffalo Forge* Refinement

In *Buffalo Forge Company v. United Steelworkers of America, AFL–CIO*, 428 U.S.

397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976), the Supreme Court refined the requirements for a *Boys Markets* injunction. In making its ruling, it re-enforced the earlier articulated concern that the courts were not in the business of arbitrating disputes. Such would be inconsistent with the policies underlying the enactment of Norris–LaGuardia. The *Boys Markets* exception to § 4 of Norris–LaGuardia, an accommodation to § 301(a), furthered the "national policy favoring peaceful resolution of labor disputes through arbitration." 428 U.S. at 408, 96 S.Ct. at 3148. The Supreme Court stated that the power to enjoin an action is not available where one party alleges the other party has merely unilaterally violated a provision of the collective bargaining agreement. The injunction is only available to stop unilateral action where the parties initially agreed to arbitrate the dispute. It is the ensuing unilateral action after agreement which violated the contract and could be enjoined. *Buffalo Forge* refined *Boys Markets* to the extent of requiring a violation of the agreement to arbitrate pursuant to the collective bargaining agreement.

## C. § 7 of the Norris–LaGuardia Act

The Sixth Circuit recognizes parallels between the procedural requirements for an injunction under *Boys Markets* and those articulated in § 7 of the Norris–LaGuardia Act. 29 U.S.C. § 107. It stated, "[t]o the extent that the procedural requirements of s 7 coincide with those requirements recognized by the Supreme Court in Boys Markets as necessary in a s 301 case, we adhere to this position." *United States v. Cunningham,* 599 F.2d 120, 126 n. 12 (6th Cir.1979). Furthermore, the Sixth Circuit later held, "[e]ven if we were indisposed to apply section 7 in suits such as this, however, its requirements are essentially met in every case where the court properly complies with the dictates of Boys Markets." *Aluminum Workers International Union v. Consolidated Aluminum Corp.,* 696 F.2d 437, 445 (6th Cir.1982).

## III.

### A. Prerequisites for an Injunction

■ The Sixth Circuit articulated the analysis to be followed when determining whether a party is entitled to an injunction. In *International Union, United Automobile Workers v. Lester Engineering Co.,* 718 F.2d 818 (6th Cir.1983), the court stated:

> First, the controversy must involve or grow out of a labor dispute within the meaning of Section 4 of the Act. Second, a full evidentiary hearing must be held. Third, the court must find that the dispute underlying the controversy is subject to binding arbitration under the terms of the collective bargaining agreement. Finally, the traditional equitable bases for injunctive relief must be met. A court has jurisdiction to issue an injunction only where all four of the above steps have been completed and satisfied.

*Id.* at 822. The parties have agreed that the above represents the correct analysis for the court to follow.

### 1. Labor Dispute and Evidentiary Hearing

The parties involved herein both concede this issue involves a "labor dispute" as defined by § 4 of the Norris–LaGuardia Act. Furthermore, both parties agree that they have been afforded the requisite evidentiary hearing. Therefore, the court will not elaborate further on these requirements.

### 2. Underlying Dispute Arbitrable

The court must identify the underlying dispute and determine whether it is subject to mutually binding arbitration. See *Boys Markets; Buffalo Forge.* Under the traditional *Boys Markets* analysis, the court's inquiry would be limited to determining whether the parties, in fact, agreed to arbitrate the issue. However, if the parties have, indeed, arbitrated the grievance, then the court must consider the issue concerning the finality of the award and its effect upon the petition for injunctive relief.

The Supreme Court considered the finality issue in the context of an unfair representation claim by employees against their union in the case of *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). *Hines* demonstrates

that until there is an adjudication in the underlying unfair representation case, the arbitration award lacks the requisite finality for purposes of the collective bargaining agreement. The Supreme Court recognized that arbitration processes are not error-free and that most erroneous decisions could not withstand the finality bar. In fact, individuals are precluded from relitigating the merits of the case due to, for example, newly discovered evidence.

However, the Supreme Court took quite a different position where the erroneous decision was due to the union's failure to represent fairly its members. "For in that event error and injustice of the grossest sort would multiply." 424 U.S. at 571, 96 S.Ct. at 1059. Where the union's duty of fair representation has been challenged, then there does not exist the requisite finality for enforcement purposes. The Court stated, "[the] enforcement of the finality provision where the arbitrator has erred is *conditioned upon* the union's having satisfied its statutory duty fairly to represent the employee in connection with the arbitration proceedings." 424 U.S. at 571, 96 S.Ct. at 1059 (emphasis added).

Counsel for Local 89 urges the court to adopt the view that the award is final until there is a decision against Local 89 in the unfair representation claim. However, the court finds this argument unpersuasive in light of the Supreme Court's ruling in *Hines.* In *Hines* the Court, quoting *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) stated:

> The joint committee's decision was held binding on the complaining employees only after we determined that the union had not been guilty of malfeasance and that its conduct was within the range of acceptable performance by a collective-bargaining agent, a wholly unnecessary determination if the union's conduct was irrelevant to the finality of the arbitral process.

424 U.S. at 568, 96 S.Ct. at 1058.

■ In light of the Supreme Court's ruling in *Hines,* an injunction of a strike is permissible under a *Boys Markets* analysis, where the parties have arbitrated the decision, but have yet to receive the final arbitration award. The employees in this case, as in *Boys Markets,* failed to follow the mandates of the collective bargaining agreement. Only D & M's failure to comply with the final decision of the arbitration panel would trigger the employees' right to strike. In this case, the arbitration decision is not final; consequently, the employees' right to strike under the collective bargaining agreement has not been triggered.

### 3. Traditional Criteria for Injunctive Relief

■ Under *Boys Markets,* an injunction must also be grounded under traditional principles of equity. Those principles are as follows: (a) whether breaches are occurring and will continue, or have been threatened and will be committed; (b) whether they have caused or will cause irreparable injury to the employer; and (c) whether the employer will suffer more from the denial of an injunction than will the union from its issuance. 398 U.S. at 254, 90 S.Ct. at 1594.

#### a. Breaches of collective bargaining agreement

Article 7, § 1 of the collective bargaining agreement provides that the union is not entitled to strike over a matter submitted to the arbitration panel unless the employer fails to comply with the decision. Article 7, § 10 requires that if one of the parties fails to comply with the final decision of the arbitration panel within ten days after its issuance, the other party, if it does comply, has the right to economic recourse.

Thus the collective bargaining agreement requires that the union may not strike unless and until the employer fails to comply with a final decision of the arbitration panel. Here, the finality of the decision of the arbitration panel is not fixed until the fair representation claim has been decided.

However, Local 89 members did in fact strike on December 28, 1994, based on their belief that the arbitration award was in fact final. Local 89 has manifested its intention to strike again if D & M does not immediately pay the sums required by the arbitration award. It is therefore clear that a violation of the collective bargaining agreement has

occurred, and will recur, unless an injunction is issued.

### b. Irreparable Harm to D & M

If the court were not to issue the preliminary injunction, D & M would be forced to choose between two alternatives. D & M could pay roughly two million dollars to the union members in accordance with the arbitration award, or it could refuse to do so and be faced with a strike by Local 89 union members.

If D & M chose to pay the arbitration award and it was subsequently determined that the arbitration decision was erroneous, D & M might subsequently be unable to recover those sums from the individual union members. A theoretical right to recover money damages will not constitute an adequate legal remedy where difficulties in the collection of any judgment render that remedy illusory. *Peabody Coal v. UMW*, 416 F.Supp. 485 (E.D.Ill.1976).

As to the latter alternative, any strike against D & M would cause immediate and substantial financial losses. In addition, Ford might exercise its contractual right to terminate its business relationship with D & M due to D & M's inability to perform under their contract. Finally, D & M's goodwill and long-term business relationship with Ford under their five-year contract would be seriously undermined. D & M's ability to competitively pursue future business contracts in the industry would also be hindered. *United States v. Cunningham*, 599 F.2d 120, 127 (6th Cir.1979); *Dannon Company, Inc. v. Whelan*, 555 F.Supp. 361, 366–67 (S.D.N.Y. 1983).

It thus appears that either path would cause D & M injury of a type that could not be repaired by D & M or any subsequent resort to the courts.

### c. Balancing Equities

It is apparent that the employer will suffer more from the denial of the injunction than the union will suffer from its issuance.

Were the court to deny the injunction, the strike by the union members would effectively prevent D & M from carrying on its day to day business. As noted above, this would result not only in monetary losses to D & M, but in harm to D & M's goodwill and ongoing business relationship with Ford Motor Company.

In addition, it appears that some 3600 workers at FTP, strangers to the present dispute, would be prevented from working because of D & M's inability to transport the trucks away from the only gate at the Louisville facility.

D & M has already manifested its willingness to pay out any sums required of it, but merely wishes to avoid "paying twice" should the plaintiffs in the fair representation suit be successful. D & M has posted two million dollars ($2,000,000) with the clerk of the court to cover any costs or expenses incurred or other injuries sustained should it be subsequently determined that the injunction was wrongly issued. Thus, the union will suffer no monetary loss if the injunction is issued.

Furthermore, the court has advanced the trial on the liability issue for the fair representation claim from June 8, 1995 to February 1, 1995 on its docket. Once that claim is resolved, the finality of the arbitration award will be fixed. The longevity of the injunction, and thus any consequent harm to the union, has been thereby considerably reduced.

### B. Conclusion

Local 89 argues that an injunction in this case would open the door to widespread litigation in this area. As a result, an employer would refuse to honor a final arbitration award until it was convinced no unfair representation claims would be made in court. Such a result, Local 89 maintains, would greatly undermine the arbitration process. While these arguments may be relevant, the court is not persuaded. In fact, the arguments set for by counsel for Local 89 were similar to the arguments before the Supreme Court in *Hines.*

In *Hines,* counsel argued that creating a claim for unfair representation which rendered arbitration non-final would not only undermine the finality rule but also the entire collective bargaining process. That it not the court's intention in this ruling. Rather the ruling is limited to the specific facts of this case. We have an arbitration agreement with a no-strike clause. However, it provides

that Local 89 may strike if the company does not comply with a final and binding arbitration award.

The finality of that award has been challenged by the plaintiffs in this action. That challenge has withstood a motion for summary judgment. Under the rationale of *Hines,* that award is not final and binding. A hearing on the merits of the fair representation claim has been advanced for trial and will be heard in three weeks.

Local 89 has no right to strike under the Agreement. This court may order an injunction under *Boys Markets.* Counsel for Local 89 argues that all arbitration awards could now be attacked on issue of finality and the District Court could be required to be the final arbiter in all grievance proceedings.

Such equitable relief is available only if a fair representation suit has been filed which attacks the finality of the arbitration award. The court believes that Rule 11 of the Federal Rules of Civil Procedure and the sanctions it authorizes will control specious § 301 claims. Such an injunction would not be available if the finality of the award has not been judicially challenged.

For the reasons stated above, an order will be entered granting the motion for a preliminary injunction.