**Leonard PIPKIN, Liquidating Trustee, Plaintiff,**

v.

**JVM OPERATING, L.C., Wickford Energy Marketing, L.C., et al., Defendants.**

**No. 6:95cv699.**

United States District Court, E.D. Texas, Tyler Division.

June 17, 1996.

**50**

James Patrick Kelley, Ireland Carroll & Kelley, Tyler, TX, Jason Riley Searcy, Longview, TX, for Leonard Pipkin.

Mark K. Glasser, Houston, TX, Shelley A. Bush, Houston, TX, for JVM Operating, L.C. and Wickford Energy Marketing, L.C.

Anthony B. Schram, Houston, TX, for Kodiak Operating Company, Michael A. Coolures and Pat Strong.

Bobby Dean Mims, Tyler, TX, for Cedar Pipeline Company and W.K. Anderson.

Shelley A. Bush, Houston, TX, for Keith Maxwell and Mike Jones.

Bobby Dean Mims, Tyler, TX, for Cedar Pipeline Company.

Robert Griggs Richardson, Hutcheson & Grundy, Dallas, TX, for H & S Production Inc.

James Patrick Kelley, Ireland Carroll & Kelley, Tyler, TX, for Dennis Hayden, Lloyd Bolding, Larry Sanders, Clint Hough, Don Calicutt, Ray Toole, Herman Fichtner, Mickey Smith and Steven Sparkman.

William Sheehy, Wilson Sheehy Knowles Robertson & Cornelius, Tyler, TX, for Charles Ryan.

### MEMORANDUM OPINION

JUSTICE, District Judge.

### I. Background

JVM Operating, L.C., and Wickford Energy Marketing, L.C., defendants in the above-numbered and entitled civil action, appeal from a preliminary injunction, styled "Mandatory Injunction to Compel Turnover of Property," entered in the United States Bankruptcy Court for the Eastern District of Texas, Tyler Division, by the Honorable Houston Abel, United States Bankruptcy Judge, on September 6, 1995. The injunction at issue ordered Wickford to turn over to Leonard Pipkin, plaintiff-appellee, certain proceeds from oil and gas sales, and ordered JVM and Wickford to provide an accounting of certain sales and transport of oil and gas. The injunction further provided for sanctions if defendant-appellants did not comply, and required Pipkin to post a $1,000 bond.

Pipkin, Liquidating Trustee for the bankruptcy estate of R & C Petroleum,[1] brought the instant adversary proceeding charging defendants JVM and Wickford, along with others, with wrongfully negotiating a post-petition gas transportation agreement which was unfavorable to R & C Petroleum, Inc. ("R & C" or the "R & C estate"), the debtor. On June 28, 1995, the Bankruptcy Court confirmed the Chapter 11 Bankruptcy Plan

---

1. By virtue of assignments and transfers made in the confirmed plan of organization, Pipkin, as Trustee, is the owner and holder of all rights, claims, and causes of action previously held by R & C.

of Reorganization for R & C. On September 28, 1995, the reference of this adversary proceeding to the Bankruptcy Court was withdrawn. Prior to this withdrawal, appellants timely filed notices of appeal as to the turnover injunction issued by the Bankruptcy Court.

In the adversary suit, plaintiff-appellee alleges that at some time in June, 1994, after the filing of the R & C bankruptcy petition, one or more of defendants, Pat Strong, Mark Lay, and Mike Coolures, while acting as officers and directors of R & C, canceled a previous pipeline contract with Cedar Pipeline, negotiated the sale of Ceder Pipeline to JVM Operating, L.C., and executed a gas transportation agreement with JVM. Plaintiff-appellee further alleges that the JVM contract was substantially less favorable to R & C than the Cedar contract, and that R & C entered into the JVM contract without seeking the required approval of the Bankruptcy Court.

Plaintiff-appellee further states that on or about July 1, 1994, R & C entered into a Interruptible Gas Purchase and Sales Agreement with *Wickford Energy Marketing*.[2] Again, this action was allegedly taken without the approval of the Bankruptcy Court. Under this contract, R & C purportedly sold its gas to Wickford at the wellhead, but was nevertheless charged by Wickford and JVM for transmission at the inflated transmission rates under the JVM contract. These two contracts, according to Pipkin, caused R & C to be substantially underpaid for its gas. Alleging these facts, on July 5, 1995, plaintiff-appellee instituted this adversary proceeding in the Bankruptcy Court. At some point during the spring or summer of 1995, Wickford suspended and refused to tender to Trustee the production proceeds ("suspended proceeds") which it had received from the sale of oil and gas produced in May and June, 1995, owed to R & C as interest owner or operator. In response, on August 22, 1995, the Trustee applied for an injunction ordering turnover of the suspended proceeds.

On September 1, 1995, pursuant to the confirmed plan of reorganization, the sale of substantially all of R & C's assets to H & S,

effective June 1, 1995, was closed. At that time, H & S became the owner of the June gas production attributable to R & C. Also in the course of this sale, R & C paid Dowell Schlumberger production payments for May and June, although those production payments were among the suspended proceeds. Dowell Schlumberger, as a result, transferred its rights to these proceeds to R & C.

The hearing on Pipkin's application was originally set for August 30, 1995, but was reset for September 5, 1995, to cure a defect in notice. At the hearing the Trustee appeared and offered testimony, and appellants appeared through counsel. The Bankruptcy Court took judicial notice of previous and related hearings on August 2, 1995, and August 30, 1995, at which Mike Jones—the President of Wickford—and Leonard Pipkin, among others, testified. At the close of this hearing, the Bankruptcy Court ruled that it had jurisdiction and that the Trustee had established his entitlement to injunctive relief. On September 6, 1995, the bankruptcy court issued the injunction here contested, which ordered:

(1) Wickford to turn over to Pipkin, within ten days, the sum of $249,370.71, representing proceeds of gas sold to Wickford in May, 1995, and attributable to the interest of R & C Petroleum, Inc., and Dowell Schlumberger, Inc; and,

(2) Wickford to turn over to Pipkin, within ten days, the sum of $50,438.36, representing proceeds attributable to oil sales of R & C Petroleum, Inc., for the month of June, 1995; and,

(3) JVM and Wickford to provide, within ten days, an accounting of all gas transported by JVM and all gas and/or oil purchased by Wickford from wells in which R & C has or has had an interest for the time period of June 1, 1994 until September 6, 1995; and,

(4) sanctions of $5,000 per day if Wickford failed to comply with the orders requiring the turnover of funds; and,

(5) Pipkin to post a bond of $1,000.

2. Wickford owns JVM.

In addition, at the September 6 hearing, counsel for Pipkin represented that the funds turned over would be held in escrow. This appeal by Wickford and JVM followed. The order of the Bankruptcy Court will be affirmed.

## II. Standard of Review

 On appeal, a bankruptcy court's findings of fact are not to be set aside "unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed.R.Bank.P. 8013; *In re Matter of Webb (Webb v. Reserve Life Ins. Co.)*, 954 F.2d 1102 (5th Cir.1992). A finding of fact is clearly erroneous when:

> although there is clear evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.... Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Anderson v. City of Bessemer*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Questions of law are subject to *de novo* review. *In re T.B. Westex Foods, Inc. (T.B. Westex Foods, Inc. v. FDIC)*, 950 F.2d 1187, 1190 (5th Cir.1992). The preliminary injunction should be upheld "unless grounded upon a clearly erroneous factual determination, an error of law, or an abuse of discretion." *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir.1990). The abuse of discretion standard applies to "that vast area of equitable choice that remains to the chancellor who has properly applied the law to fact findings that are not clearly erroneous." *In re REPH Acquisition Co. (Republic Health Corp. v. Coral Gables, Ltd.)*, 134 B.R. 194, 202–203 (N.D.Tex.1991).

## III. Analysis

### A. Leave to Appeal

 First it is noted that this appeal is before the court pursuant to notices of appeal filed in the Bankruptcy Court. Appeals to this court are governed by 28 U.S.C. § 158. Because the order appealed is interlocutory, rather than final, appeal should have been perfected by means of a motion for leave to appeal rather than mere notice. 28 U.S.C. § 158(a)(3). Leave to appeal may nonetheless be granted, so long as a timely notice of appeal has been filed. Fed.R.Bank.P. 8003(c); *In re Warner (Warner v. Unsecured Creditors' Comm.)*, 94 B.R. 734 (M.D.Fla. 1988). This court has recently held it is appropriate to allow the appeal of a preliminary injunction, *In re Reserve Production, Inc. (Clark v. Sanders)*, 190 B.R. 287, 290 (E.D.Tex.1995), and the reasoning relied upon in that opinion is equally persuasive here. Granting leave will not prejudice the parties, as appellee has briefed the merits of the appeal and has not objected. *In re Electronic Theatre Restaurants Corp.*, 53 B.R. 458 (N.D.Ohio 1985). Leave to appeal is therefore granted.

### B. Jurisdiction and Adjudicative Power

#### 1. Subject Matter Jurisdiction

 Appellants first argue that the Bankruptcy Court lacked subject matter jurisdiction to enter the injunction. Specifically, appellants argue that the Bankruptcy Court exceeded its jurisdiction by requiring turnover of June oil proceeds, since these proceeds have been sold to H & S. Bankruptcy courts derive their jurisdiction from the statutory jurisdiction of the district court. *Celotex Corp. v. Edwards*, —— U.S. ——, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). District courts "have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Because "related to" jurisdiction provides the broadest source of jurisdiction, a court analyzing its bankruptcy jurisdiction must only determine whether the matter at hand falls into this category:

> For the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between proceedings "arising under", "arising in a case under", or "related to a case under", title 11.... [I]t is necessary only to determine whether a matter is at least "related to" the bankruptcy.

*In re Wood (Wood v. Wood)*, 825 F.2d 90, 93 (5th Cir.1987). An action falls into the "related to" jurisdiction of the bankruptcy court when "the outcome of [the] proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *In re Walker (Walker v. Cadle Co.)*, 51 F.3d 562, 569 (5th Cir.1995) (citation omitted).

■■■ The underlying adversary proceeding does fall within the "related to" jurisdiction of the Bankruptcy Court. The gas wells served by the Cedar Pipeline represent the majority of the assets of the estate. Absent transportation, the value of this asset would be significantly reduced. And, if transportation is provided, wrongfully, at an unreasonable cost, the value of the asset is also reduced. Resolution of the contested transactions will necessarily effect the bankruptcy estate and the Bankruptcy Court properly exercised jurisdiction.

Appellants contend, nonetheless, that the bankruptcy court lacked jurisdiction to enter an injunction affecting property of the debtor which had been sold to H & S. The sale of R & C assets did not deprive the Bankruptcy Court of jurisdiction to enter this order. First, as discussed above, the underlying adversary falls squarely within the Bankruptcy Court's jurisdiction. Second, the turnover and accounting of assets, even assets subsequently sold to H & S, could conceivably have an effect on the bankruptcy estate. *Walker*, 51 F.3d at 569. For example, it is reasonable to infer, as the Bankruptcy Court did, that H & S would expect and require R & C to deliver the assets which it had sold. Indeed, it is difficult to understand how the contested disposition of $50,438.36 and the failure to account for June oil and gas sales could not alter the debtor's "rights, liabilities, options, or freedom of action" or its "handling and administration of the bankruptcy estate." *In re Hall's Motor Transit Co.*, 889 F.2d 520, 523 (3rd Cir.1989) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). As for the remaining provisions of

the injunction, the turnover of property owned by the estate and allegedly wrongfully withheld does implicate estate administration and is related to the bankruptcy. The Bankruptcy Court properly exercised jurisdiction over both the adversary proceeding and the request for injunctive relief.[3]

## 2. Ancillary Jurisdiction

■■■■■■ Alternatively, appellee argues, the Bankruptcy Court had jurisdiction to enter the injunction as an order enforcing its own previous order. *Transcript of August 30 Hearing* at 22. Federal courts need no independent basis of jurisdiction to enter an injunction in support or construction of their own orders. *Local Loan Co. v. Hunt*, 292 U.S. 234, 239, 54 S.Ct. 695, 696–97, 78 L.Ed. 1230 (1934); *Royal Ins. Co. of America v. Quinn–L Capital Corp.*, 3 F.3d 877, 881 (5th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1541, 128 L.Ed.2d 193 (1994). On June 28, 1995, the Bankruptcy Court entered an order confirming the joint plan of reorganization for R & C Petroleum and, subsequently, entered orders approving the sale of the working assets of the debtor.

In order for the exercise of such ancillary jurisdiction to be proper, the subject matter of the injunctive relief must have been encompassed in the court's prior order, and the court must have had subject matter jurisdiction to enter the prior order. *In re Fairchild Aircraft Corp. (Fairchild Aircraft Inc. v. Cambell)*, 184 B.R. 910, 916 (Bankr. W.D.Tex.1995). The entry of the Order Confirming the Joint Plan of Reorganization and the Order Approving the Sale of Working Interests of Debtor were both within the Bankruptcy Court's subject matter jurisdiction. *See, e.g.*, 28 U.S.C. 157(b)(2)(L). These orders governed the reorganization and sale of debtor assets. The injunction serves to enforce these orders by enabling R & C to collect and account for revenues owed to R & C, or to H & S pursuant to the sale of assets

---

**3.** Plaintiff-appellee argues that jurisdiction is also proper under the retention of jurisdiction provisions of the confirmed plan of reorganization. The confirmed plan may not "confer jurisdiction ... beyond that provided in § 1334," but neither does confirmation "divest the court of such jurisdiction." *In re TGX Corp. (TGX Corp. v. Templeton)*, 168 B.R. 122, 130 n. 29 (W.D.La.1994). A separate analysis of jurisdiction under the plan is therefore unnecessary, as post-confirmation jurisdiction depends upon pre-confirmation § 1334 jurisdiction.

by R & C. Accordingly, the Bankruptcy Court had jurisdiction to issue the injunction.

Appellants argue that bankruptcy courts may not exercise ancillary jurisdiction, relying on *Walker*, 51 F.3d 562. In *Walker*, the United States Court of Appeals for the Fifth Circuit noted that "it would be somewhat incongruous to ... allow[ ] bankruptcy courts to exercise supplemental jurisdiction to pull into bankruptcy matters Congress excluded in its specific jurisdictional grants." *Id.* at 573. On this, among other bases, the Fifth Circuit held that the bankruptcy court did not have supplemental jurisdiction to hear a third-party contribution claim. While *Walker* certainly suggests that a bankruptcy court's exercise of supplemental jurisdiction over third parties asserting state law causes of action against nondebtors is problematic, it does not call into question the more limited use of ancillary jurisdiction to enforce previous court orders. *See, e.g., In re Fairchild Aircraft Corp.*, 184 B.R. 910. Accordingly, the Bankruptcy Court had ancillary jurisdiction over this matter.

### 3. Core Proceeding

■■■■ Appellants next argue that the Bankruptcy Court lacked adjudicative power to enter the preliminary injunction under 28 U.S.C. § 157. Both sides, in their briefing, assume adjudicative power was necessary here, although the injunction at issue is preliminary, not permanent.[4] The constitutional requirements of Article III dictate that "bankruptcy judges may exercise full judicial power over only those controversies that implicate the peculiar rights and powers of bankruptcy." *Wood*, 825 F.2d at 96. In order to guarantee that litigants' Article III rights are not compromised, 28 U.S.C. § 157 provides that bankruptcy courts may hear and determine core proceedings, and may submit findings of fact and conclusions of law to the district court in non-core proceedings. Through this division, the Article III courts retain—as is constitutionally required—the essential attributes of judicial power. *Northern Pipeline Constr. Co. v. Marathon Pipe*

*Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). A bankruptcy court's power to hear and determine a cause of action, therefore, turns on whether or not a proceeding is core. 28 U.S.C. § 157(b)(1); *see, e.g., REPH Acquisition Co.*, 134 B.R. 194.

■■■■ The determination that a particular proceeding is core or non-core depends upon its relationship to bankruptcy law. "Causes of action created or determined by a statutory provision of title 11" or that "would have no existence outside of bankruptcy" are core proceedings which the bankruptcy court has power to decide. *Wood*, 825 F.2d at 96–97. In the adversary proceeding, plaintiff-appellee contends that defendants acted in violation of 11 U.S.C. § 549, which prohibits post-petition transfers. Because this civil action rests in part on the bankruptcy code, it is a core proceeding subject to adjudication by the Bankruptcy Court.

This would appear to be sufficient basis for a determination that the injunction proceeding was core. *See, e.g., In re Global Int'l Airways Corp.*, 76 B.R. 700, 705 (Bankr. W.D.Mo.1987) (noting power of bankruptcy court to issue injunctions "to recover assets of the estate which were transferred after bankruptcy."). However, even if this were not the case, there are several other valid grounds for a conclusion that the adversary and the injunction are core proceedings. Although title to a portion of the property covered by the injunction had recently passed from the debtor, successful administration of the estate necessarily depends upon preserving those assets which were, allegedly, wrongfully withheld prior to transfer. The distribution of assets by the debtor requires successful collection of those assets, and it is the loss of estate assets against which the injunction is designed to protect. *Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183, 190 (5th Cir.1990) (noting that a core proceeding "must involve a decision that ultimately affects the distribution of the debtor's assets"). Moreover, the post-peti-

---

4. The statute provides only that "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings ...". 28 U.S.C. § 157(b)(1). *See, e.g., Lower Brule Const. Co. v.*

*Sheesley's Plumbing & Heating Co., Inc.*, 84 B.R. 638, 640 (D.S.D.1988) (noting that § 157 does not prevent bankruptcy court from issuing preliminary injunctions in non-core proceedings).

tion dispute over this property, whose possession by defendants depends upon an allegedly wrongful post-petition contract, cannot be severed from the remainder of the bankruptcy court proceedings. *In re Case (Citzens Bank & Trust Co. v. Case),* 937 F.2d 1014, 1019–20 (5th Cir.1991). Since the injunction at issue was designed to and will enable proper administration of the estate, turnover of property belonging to the estate, and orderly liquidation of assets of the estate, the injunction matter is core. 28 U.S.C. § 157(b)(2)(A), (E), & (O).

Bankruptcy courts have the power to issue injunctions necessary to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105; Fed.R.Bank.P. 7065. The contested injunction will allow appellee to preserve estate assets and forward estate distribution. Its issuance was well within the power of the Bankruptcy Court.

### a. Waiver

■■■■ Plaintiff-appellee argues that even if the proceedings at issue here were not core, defendant-appellants waived any objection to the bankruptcy court's exercise of full judicial powers. The constitutional right to adjudication by an Article III court is waivable. *Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 847–51, 106 S.Ct. 3245, 3255–56, 92 L.Ed.2d 675 (1986). Such waiver may arise by implication, as where a litigant fails to object to a bankruptcy court's exercise of core jurisdiction before or during the relevant hearing. *In re Texas Gen. Petroleum Corp. (McFarland v. Leyh),* 52 F.3d 1330, 1337 (5th Cir.1995). The appellants waived any objection to the Bankruptcy Court's exercise of full judicial powers by failing to raise this contention before the Bankruptcy Court. Nowhere in their written response to Pipkin's application for the injunction do appellants assert that this matter was non-core. At the hearing on this matter appellants again failed to object, or request that the Bankruptcy Court submit findings of fact and conclusions of law to the District Court rather than entering the injunction. These failures amount to implied consent to the Bankruptcy Court's assumption of core jurisdiction, and the injunction

issued by the Bankruptcy Court was, therefore, a proper exercise of judicial power.

### C. Merits of the Injunction

■■■■ Appellants contend that Pipkin did not make the showings necessary for the grant of a preliminary injunction. In order to establish entitlement to a preliminary injunction a plaintiff must show:

(1) a substantial likelihood of success on the merits;

(2) a substantial threat that the movant will suffer irreparable injury if the injunction is not issued;

(3) that the threatened injury to the movant outweighs any damage the injunction might cause the opponent; and

(4) that the injunction will not disserve the public interest.

*Blue Bell Bio–Medical v. Cin–Bad, Inc.,* 864 F.2d 1253, 1256 (5th Cir.1989). Appellants argue that the record does not support the Bankruptcy Court's award of a preliminary injunction, pointing specifically to the finding that plaintiff-appellee would suffer irreparable harm if the injunction were not granted.

The Bankruptcy Court found the following risk of irreparable harm: absent an injunction "a valuable asset, to wit: funds on deposit resulting from sales of oil and gas which were or became the property of R & C, may be lost to the creditors of this proceeding." *Order Granting Application for Mandatory Injunction to Compel Turnover of Property* at 2. This finding was not clear error. The bankruptcy court heard a proffer of testimony from Leonard Pipkin that he had a fiduciary obligation to liquidate the estate as quickly as possible, that allowing the funds to remain suspended would cause considerable delay in regaining the funds, that Wickford might file its own bankruptcy or be named in an involuntary bankruptcy, and that judgments from other parties might be forthcoming. *Transcript of September 5 Hearing* at 16. Appellants declined to cross-examine Pipkin, *id.,* and declined to put on witnesses or make argument. *Id.* at 17.

■■■■ An injury is irreparable if it cannot be undone through monetary remedies. *Cho v. Itco, Inc.,* 782 F.Supp. 1183, 1185

(E.D.Tex.1991). Monetary remedies may not suffice where "economic rights are especially difficult to calculate." *Lakedreams v. Taylor*, 932 F.2d 1103, 1109 (5th Cir.1991). This is the case where, for example, there is injury to a party's "operations, reputation, and goodwill." *In re Alert Holdings, Inc. (Alert Holdings, Inc. v. Interstate Protective Services, Inc.)*, 148 · B.R. 194, 200 (Bankr. S.D.N.Y.1992). In the instant case, the Trustee showed a risk that, absent injunction, he would be unable to fulfill his fiduciary duties to .expeditiously liquidate the estate. The calculation of damages caused by such delay would be difficult, and delay could injure such intangibles as the estate's "operations, reputation, and goodwill." Accordingly, the Bankruptcy Court's conclusion that plaintiff had shown irreparable harm was correct.

 Furthermore, the Trustee showed a risk of loss of the assets absent turnover, and it is appropriate to award an injunction where "it is shown that a money judgment will go unsatisfied absent equitable relief." *Alvenus Shipping v. Delta Petroleum (U.S.A.) Ltd.*, 876 F.Supp. 482, 487 (S.D.N.Y.1994); *Collins v. Aggreko, Inc.*, 884 F.Supp. 450, 452 (D.Utah 1995) ("Irreparable harm could result if defendants will be unable to pay damages."); *see also Enterprise International, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 473 (5th Cir.1985) ("The absence of an available remedy by which the movant can later recover money damages, however, may also be sufficient to show irreparable injury."); *Chemlawn Services Corp. v. GNC Pumps, Inc.*, 690 F.Supp. 1560, 1569 (S.D.Tex.), *aff'd*, 856 F.2d 202 (5th Cir.1988). "A theoretical right to recover money damages will not constitute an adequate legal remedy where difficulties in the collection of any judgment render that remedy illusory." *Winston v. General Drivers Local 89*, 879 F.Supp. 719, 725 (W.D.Ky.1995). Moreover, a preliminary injunction designed to freeze the status quo by preserving particular and discrete assets which are in dispute is appropriate so long as

the equitable remedy would be available to plaintiff as final relief. *In re Fredeman Litigation (Dixie Carriers, Inc. v. Channel Fueling Service, Inc.)*, 843 F.2d 821, 827 (5th Cir.1988). Although plaintiff does not explicitly seek an injunction in his pleadings, the facts as presented would support an order of equitable relief if plaintiff prevails. Fed. R.Civ.P. 54(c) ("Every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings."). For these reasons, the issuance of the injunction was correct.

### D. Unusual Circumstances

 Appellants argue that the injunction at issue protects third parties, and its entry was therefore an abuse of discretion as the "unusual circumstances" necessary for such an injunction were not shown. Appellants misconstrue the nature of the injunctive relief ordered, and of the unusual circumstances test. The unusual circumstances test, articulated by the Fifth Circuit in *In re Zale Corp. (Feld v. Zale Corp.)*, 62 F.3d 746, 761 (5th Cir.1995), applies to permanent injunctions which effectively stay third party actions. The Bankruptcy Court here did not enjoin a third party action,[5] which renders *Zale* inapplicable. More importantly, the injunction, designed to protect and recover estate assets, was proper: "[S]ection 105 [of 11 U.S.C.] permits the court to issue both preliminary and permanent injunctions after confirmation of a plan to protect the debtor and the administration of the bankruptcy estate." *In re American Hardwoods (American Hardwoods, Inc. v. Deutsche Credit Corp.)*, 885 F.2d 621, 625 (9th Cir.1989). JVM and Wickford's arguments on this point are without merit.

### IV. Conclusion

It is concluded that the Bankruptcy Court properly exercised jurisdiction in this action and had the adjudicative power necessary to enter the preliminary injunction. Furthermore, the findings underlying the injunction

---

**5.** *Zale* defines third party actions as actions between nondebtors and noncreditors. *Zale,* 62

F.3d at 751.

are not clearly erroneous, and the terms and issuance of the injunction were well within the sound discretion of the Bankruptcy Court. Accordingly, the September 6, 1995, preliminary injunction order styled "Order Granting Application for Mandatory Injunction to Compel Turnover of Property" issued by the Bankruptcy Court shall be, and is hereby, **AFFIRMED.**